**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------x
                                                           :
UNITED STATES OF AMERICA                                   :
                                                           :
                                                           :
                                                           :
          -against-                                        :          Case No. 1:22-cr-396-PKC
                                                           :
                                                           :
BRIJESH GOEL,                                              :
                                                           :
                    Defendant.                             :
----------------------------------------------------------x


## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT BRIJESH GOEL'S OMNIBUS PRE-TRIAL MOTIONS

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ............................................................................................1

II. MOTION TO COMPEL DISCLOSURE OF BRADY MATERIAL ..............................3

III. MOTION TO COMPEL DISCLOSURE OF RULE 16 DISCOVERY........................7

IV. MOTION FOR AN AUDIBILITY HEARING ..............................................................17

V. MOTION FOR A BILL OF PARTICULARS ................................................................19

VI. MOTION TO STRIKE SURPLUSAGE FROM THE INDICTMENT .....................25

VII. CONCLUSION ..............................................................................................................26

Page(s)

**CASES**

*Chevron Corp. v. Salazar*,
    275 F.R.D. 437 (S.D.N.Y. 2011) ............................................................11

*Giglio v. United States*,
    405 U.S. 150 (1972)..................................................................................3

*Leka v. Portuondo*,
    257 F.3d 89 (2d Cir. 2001).......................................................................5

*S.E.C. v. Strauss*,
    2009 WL 3459204 (S.D.N.Y. Oct. 28, 2009) .........................................11

*Tomlinson v. El Paso Corp.*,
    245 F.R.D. 474 (D. Colo. 2007) .............................................................11

*United States v. Akhavan*,
    2020 WL 2555333 (S.D.N.Y. May 20, 2020) ........................................21

*United States v. Arango-Correa*,
    851 F.2d 54 (2d Cir. 1988).....................................................................18

*United States v. Avenatti*,
    559 F. Supp. 3d 274 (S.D.N.Y. Sept. 9, 2021) ........................................3

*United States v. Barcelo*,
    628 F. App'x 36 (2d Cir. 2015) ..............................................................12

*United States v. Blakstad*,
    2020 WL 5992347 (S.D.N.Y. Oct. 9, 2020)...........................................25

*United States v. Blaszczak*,
    No. 17-cr-00357 (S.D.N.Y. Mar. 13, 2018)............................................20

*United States v. Blondet*,
    2019 WL 5690711 (S.D.N.Y. Nov. 4, 2019)............................................3

*United States v. Bortnovsky*,
    820 F.2d 572 (2d Cir. 1987) ...................................................................22

*United States v. Bryant*,
    480 F.2d 785 (2d Cir. 1973)............................................................................17, 18

*United States v. Carson*,
    No. 09 Cr. 77 (JVS) (C.D. Cal. Dec. 8, 2009) ...................................................12

*United States v. Clarke*,
    979 F.3d 82 (2d Cir. 2020)............................................................................7, 8

*United States v. Contorinis*,
    No. 09-cr-01083-RJS (S.D.N.Y. May 5, 2010) ...................................................24

*United States v. DeFabritus*,
    605 F. Supp. 1538 (S.D.N.Y. 1985)....................................................................25

*United States v. DePalma*,
    461 F. Supp. 778 (S.D.N.Y. 1978) .....................................................................26

*United States v. Djibo*,
    151 F. Supp. 3d 297 (E.D.N.Y. 2015) ................................................................14

*United States v. Douglas*,
    525 F.3d 225 (2d Cir. 2008)..............................................................................4

*United States v. Feola*,
    651 F. Supp. 1068 (S.D.N.Y. 1987)..............................................................3, 21

*United States v. Ferguson*,
    2008 WL 104078 (D. Conn. Jan. 4, 2008)..........................................................4

*United States v. Giffen*,
    379 F. Supp. 2d 337 (S.D.N.Y. 2004).................................................................12

*United States v. Greebel*,
    2017 WL 3610570 (Aug. 4, 2017).......................................................................26

*United States v. Gupta*,
    No. 11-cr-00907, ECF 47 (S.D.N.Y. Apr. 10, 2012).............................................24

*United States v. Hemmings*,
    2009 WL 1616517 (E.D.N.Y. June 9, 2009), *aff'd*, 482 Fed. App'x 640 (2d Cir. 2012)..18, 19

*United States v. Johnson*,
    2017 WL 11490480 (E.D.N.Y. May 24, 2017) ....................................................20

*United States v. Kassir*,
    2009 WL 995139 (S.D.N.Y. Apr. 9, 2009)..........................................................25

*United States v. Kloszewski*,
  2017 WL 2061391 (S.D.N.Y. May 11, 2017), *aff'd*, 760 F. App'x 12 (2d Cir. 2019)............14

*United States v. Malachowski*
  604 F. Supp. 2d 512 (N.D.N.Y. 2009) ....................................................................18

*United States v. Mango*,
  1997 WL 222367 (N.D.N.Y. May 1, 1997)...............................................................26

*United States v. Maniktala*,
  934 F.2d 25 (2d Cir. 1991)..........................................................................................8

*United States v. Martinez*,
  844 F. Supp. 975 (S.D.N.Y. 1994) .............................................................................7

*United States v. Martoma*,
  2013 WL 2435082 (S.D.N.Y. June 5, 2013) ............................................................25

*United States v. McDonald*,
  198 F.3d 235 (2d Cir. 1999).......................................................................................18

*United States v. McVeigh*,
  954 F. Supp. 1441 (D. Colo. 1997)............................................................................14

*United States v. Meregildo*,
  920 F. Supp. 2d 434 (S.D.N.Y. 2013).......................................................................12

*United States v. Mergen*,
  543 Fed. App'x 46 (2d Cir. 2013)..............................................................................18

*United States v. Newman*,
  No. 12-cr-121-RJS, ECF 111 (S.D.N.Y. Aug. 29, 2012) ........................................24

*United States v. Noel*,
  2020 WL 12834537 (S.D.N.Y. June 9, 2020) ...........................................................12

*United States v Pinto-Thomaz*,
  352 F. Supp. 3d 287 (S.D.N.Y. 2018)........................................................................21

*United States v. Reddy*,
  190 F. Supp. 2d 558 (S.D.N.Y. 2002) .....................................................................3, 5

*United States v. Rodriguez*,
  496 F.3d 221 (2d Cir. 2007)......................................................................................4, 5

*United States v. Rodriguez*,
  538 F. Supp. 2d 674 (S.D.N.Y. 2008).........................................................................5

iv

*United States v. Santobello*,
    1994 WL 525053 (S.D.N.Y. Sept. 23, 1994), *aff'd*, 101 F.3d 108 (2d Cir. 1996) .................19

*United States v. Stein*,
    488 F. Supp. 2d 350 (S.D.N.Y. 2007) ........................................................................7, 8, 9, 12

*United States v. Steinberg*,
    2013 WL 12371352 (S.D.N.Y. Sept. 18, 2013).........................................................23, 24

*United States v. Taylor*,
    1992 WL 249969 (S.D.N.Y. Sept. 22, 1992) ....................................................................19

*United States v. Tuzman*,
    2021 WL 1738530 (S.D.N.Y. May 3, 2021) .....................................................................14

*United States v. Urena*,
    989 F. Supp. 2d 253 (S.D.N.Y. 2013)...............................................................................13

*United States v. Vasquez*,
    2021 WL 2186224 (E.D.N.Y. May 27, 2021) ..................................................................8, 9

*United States v. Walters*,
    No. 16-cr-00338-PKC (S.D.N.Y. Dec. 2, 2016)..........................................................20, 24

*United States v. Washington*,
    947 F. Supp. 87 (S.D.N.Y. 1996) ......................................................................................26

*United States v. Weigand*,
    No. 20-cr-188 JSR (S.D.N.Y. May 1, 2020) .....................................................................22

*United States v. White*,
    2018 WL 4103490 (S.D.N.Y. Aug. 28, 2018)......................................................................3

*In re Various Grand Jury Subpoenas*,
    235 F. Supp. 3d 472 (S.D.N.Y. 2017)................................................................................11

**RULES**

Fed. R. Crim. P. 16(a)(1)(E) ...................................................................................................10

Fed. R. Civ. P. 26(a)(1)(A)(ii) .................................................................................................11

Fed. R. Civ. P. 34(a)(1)............................................................................................................11

Fed. R. Civ. P. 45(a)(1)(A)(iii) ................................................................................................11

Defendant Brijesh Goel respectfully submits this Reply Memorandum of Law in further support of his Omnibus pre-trial motions: (1) seeking to compel the Government to produce *Brady* material; (2) seeking to compel the Government to produce certain materials pursuant to Federal Rule of Criminal Procedure 16; (3) requesting an audibility hearing; (4) requesting a bill of particulars under Federal Rule of Criminal Procedure 7(f); and (5) moving to strike surplusage in the Indictment. *See* ECF 38.

## I. PRELIMINARY STATEMENT

Mr. Goel respectfully requests this Court grant his pre-trial motions.

*First*, Mr. Goel seeks the limited surrounding context necessary to understand the excerpted *Brady* disclosures that have been produced. The Government does not dispute that it possesses the context Mr. Goel seeks.

*Second*, Mr. Goel requests that the Government comply with its Rule 16 obligations by producing the cooperator's non-prosecution agreement and by collecting and reviewing the material information held on his devices. Because the cooperator must produce his devices to the Government at its request under the non-prosecution agreement, the Government has "control" over them under Rule 16.

*Third*, Mr. Goel requests that the Court hold an audibility hearing relating to the June 5 and June 10 recordings. The Government asserts that an audibility hearing is not necessary, but there can be no serious dispute that a significant portion of the recordings are unintelligible.

*Fourth*, Mr. Goel asks that the Government provide a bill of particulars identifying basic information necessary for Mr. Goel's defense: the alleged unlawful transactions, the names of all alleged co-conspirators, and the MNPI of the purported insider trading, including the MNPI that Mr. Goel allegedly passed to the cooperator. These materials constitute information that Mr. Goel

needs to be able to prepare his defense, and neither the Indictment nor the Government's discovery to date provide this basic information.

*Finally*, Mr. Goel seeks to strike the phrases "for example" and "among other things" from the Indictment as improper surplusage, the only purpose of which is to impermissibly enlarge the charges in the Indictment.

Accordingly, Mr. Goel respectfully reiterates his request that this Court issue an Order:

1. Requiring the Government to timely supplement its *Brady* disclosures by producing the relevant context for the deficient disclosures identified in Exhibit A to Mr. Goel's opening Memorandum of Law. *See* ECF 39-1;

2. Requiring the Government to do the following under Rule 16: (a) produce Mr. Niranjan's non-prosecution agreement, and (b) collect Mr. Niranjan's devices, and the information held therein, from his defense counsel pursuant to the undisputed terms of Mr. Niranjan's non-prosecution agreement, and produce the relevant documents under Rule 16;[1]

3. Scheduling an audibility hearing regarding the June 5 and June 10 Recordings;

4. Requiring the Government to provide Mr. Goel with a Bill of Particulars sufficient to identify, with certainty: (a) the trades allegedly based on MNPI for which the Government seeks to hold Mr. Goel liable; (b) the identity of all known co-conspirators; (c) the specific MNPI allegedly provided to Mr. Niranjan, the dates Mr. Goel allegedly received this MNPI, and the bates numbers of the documents that represent the sources of the alleged MNPI; and

5. Striking as surplusage certain extraneous allegations in paragraph 11 of the Indictment.

---

[1] Mr. Goel previously sought an Order requiring the Government to "grant access to the original devices used to capture the June 5, 2022 and June 10, 2022 recordings (the "June 5 Recording" and the "June 10 Recording," respectively) and to the original versions of the recordings." Mot. 2. For the reasons discussed, *infra*, Mr. Goel understands that the Government has produced, or has reliably committed to produce, information sufficient to satisfy these requests.

## II.  MOTION TO COMPEL DISCLOSURE OF BRADY MATERIAL

The Government sets up a strawman, accusing Mr. Goel of attempting to obtain material pursuant to 18 U.S.C. § 3500 and *Giglio v. United States*, 405 U.S. 150 (1972), before the date by which the Government has already committed to disclose these materials.  Opp. 2, 5.[2]  Not so.  Mr. Goel's Motion to Compel *Brady* explicitly relates to ambiguous *Brady* disclosures the Government *has already produced*.  The additional context around the already-produced ambiguous excerpts is *Brady*, not *Giglio* or 3500, because it is essential to Mr. Goel's ability to use the limited disclosures he has so far received.  Notably, the Government does *not* deny that it possesses the context Mr. Goel seeks.

On three occasions—on August 15, December 23, and January 9—the Government produced contextless "excerpts" of notes from attorney proffers and witness interviews that constitute *Brady* material.  As reflected in the examples below, the *Brady* excerpts produced by the Government do not contain enough detail for Mr. Goel to use them:

- 
- 
- 

---

[2] Nearly all of the cases cited by the Government analyze circumstances where a defendant sought *early* production of *Giglio* and/or 3500 material.  *See, e.g.*, *United States v. Avenatti*, 559 F. Supp. 3d 274, 285-86 (S.D.N.Y. 2021) (defendant sought *early* disclosure of the Government's trial exhibits and 3500 material); *United States v. Blondet*, 2019 WL 5690711, at *5 (S.D.N.Y. Nov. 4, 2019) (defendants moved for immediate disclosure of, among other things, *Giglio* material); *United States v. White*, 2018 WL 4103490, at *12 (S.D.N.Y. Aug. 28, 2018) (defendants moved for *early* disclosure of 3500 material); *United States v. Reddy*, 190 F. Supp. 2d 558, 561 (S.D.N.Y. 2002) (defendants sought an order directing early production of all materials subject to disclosure under *Giglio* and Section 3500); *United States v. Feola*, 651 F. Supp. 1068, 1139 (S.D.N.Y. 1987) (defendant requested *early* production of 3500 material).  Because Mr. Goel does not seek *Giglio* or 3500 material before the scheduled disclosure one month before trial, none of these cases are applicable.

*See* ECF 40-4 at 2; ECF 40-6 at 6, 8. These, and the other *Brady* "excerpts" provided by the Government lack basic information such as who or what the excerpted statements reference, when the referenced statements were made, and why the beliefs reflected in the statements were or are held. *See* Mot. 5-6 (identifying the deficiencies of multiple excerpts produced by the Government); ECF 40-7 at 1-3 (same); ECF 39-1 (collecting a complete list of the Government's deficient disclosures).

The Government states without citation to authority that, by producing "certain excerpts to the defendant," it has satisfied its *Brady* obligations. *See* Opp. 5 ("the defendant is entitled to nothing more"). But as the Second Circuit observed in *United States v. Rodriguez*, the Government's *Brady* obligations are meant to ensure that a defendant receives material, exculpatory information in the Government's possession *and* that the exculpatory information is disclosed in a manner such that "the defendant will have a reasonable opportunity to act upon the information *efficaciously*." 496 F.3d 221, 226 (2d Cir. 2007) (emphasis added).[3] The requirement that *Brady* material be produced both at a time *and* in a manner such that it can be used effectively is well-settled. *See United States v. Douglas*, 525 F.3d 225, 245 (2d Cir. 2008) (*Brady* material must be disclosed in time for its "effective use"); *United States v. Ferguson*, 2008 WL 104078, at *2-3 (D. Conn. Jan. 4, 2008) (*Brady* disclosures, among others, "must be sufficiently specific and complete to be useful"). The appropriate measure of the propriety of the "extent or timing" of

---

[3] The Government mistakenly excludes the words "*Brady* information" from the language it quotes from *Rodriguez*, suggesting that *Rodriguez* stands for the proposition that "*Giglio* requires disclosure of any materials that might be used to impeach Government witnesses 'in sufficient time that the defendant will have a reasonable opportunity to act upon the information efficaciously.'" Opp. 3 (*excerpting sentence in Rodriguez*, 496 F.3d at 226). But the *Rodriguez* Court was talking about how *Brady* must be disclosed in sufficient time for a defendant to be able to reasonably act upon the information efficaciously: "*Brady* information" [not *Giglio*] "must be disclosed . . . in sufficient time that the defendant will have a reasonable opportunity to act upon the information efficaciously." *Rodriguez*, 496 F.3d at 226.

*Brady* disclosures is the "sufficiency, under the circumstances, of the defense's opportunity to *use* the evidence when disclosure is made." *Leka v. Portuondo*, 257 F.3d 89, 100 (2d Cir. 2001) (emphasis added).

The Government's argument that *Rodriguez* does not support Mr. Goel's claims, Opp. 5, is misplaced. *Rodriguez* stands squarely for the proposition that *Brady* disclosures "must be sufficiently specific and complete in order to be useful." 496 F.3d at 226. In *Rodriguez,* the Second Circuit remanded for a determination of the "materiality and prejudice" of undisclosed witness statements to assess whether the failure to disclose the information *merited a new trial*. *Id.* at 222-23. The district court then found that the undisclosed information was neither material nor exculpatory, and the defendant did not establish "that the outcome of the proceeding would have been any different." *United States v. Rodriguez*, 538 F. Supp. 2d 674, 678 (S.D.N.Y. 2008). The court explained that "[t]his is not a situation in which knowing the" previously undisclosed "*specifics* would have helped the defense." *Id.* (emphasis added). Though the particular evidence at-issue in *Rodriguez* was not sufficiently material or exculpatory to merit a new trial, both the Second Circuit and District Court opinions demonstrate that the "specifics" of a *Brady* disclosure are critical.

The Government also posits that no relief is required because it has disclosed "the *same* notes that it relies on for its understanding of the proffers."[4] Opp. 5 (emphasis added). This is

---

[4] The Government relies on *Reddy* for the proposition that it has provided Mr. Goel with "the essential facts permitting him to take advantage of any exculpatory evidence." *See* Opp. 3, 5 (citing *Reddy*, 190 F. Supp. 2d at 575). But *Reddy* concerns witness statements collected by a company during an internal investigation, which were withheld in their entirety from the defendant. *Reddy* does not address partial disclosures that lack sufficient detail to convey the nature and substance of their meaning to the defendant. *Reddy*, 190 F. Supp. 2d at 575. Disclosing snippets that require guesswork is not disclosure of the "essential facts" that enable Mr. Goel to take advantage of the exculpatory evidence.

incomprehensible. The Government was present for the proffers and thus knows exactly what the proffered statements mean. The Government is relying on its direct understanding of what the individual said. Moreover, the Government has five *complete* FBI 302 reports to refresh its recollection of those proffers. Mr. Goel, by contrast, is forced to rely on a handful of out-of-context *excerpts* derived from these five reports without any explanation or context of their meaning. Mr. Goel should not be left to guess as to the meaning of these cryptic disclosures.

Finally, the Government maintains that its iterative disclosures of *Brady* material from the same set of sources reflect a "timely and extensive" review and production process in part because the December 23 disclosure was "substantively duplicative" of the material disclosed on August 15.[5] Opp. 4. Unfortunately, that is inaccurate. The December 23 disclosures—made over four months after the August 15 disclosure—contained information that was both new and material, although in multiple instances incomprehensible. *See* ECF 40-6. The newly produced statements included, among other things, seemingly exculpatory references to six securities, none of which were referenced in any capacity in the Government's initial disclosures. *Id.* at 6-7 (identifying statements regarding four securities identified in the Indictment, as well as two additional securities).

Mr. Goel respectfully requests that the Court order the Government to produce the surrounding context necessary to understand the ambiguous disclosures set forth in Exhibit A to Mr. Goel's opening Memorandum of Law. *See* ECF 39-1. There is no prejudice to the Government in doing so, and the Government does not claim any. Specifically, Mr. Goel

---

[5] The Government mistakenly references a November 30, 2022 supplemental disclosure in its Opposition. Opp. 4. On November 30, Mr. Goel sent the Government a letter requesting the production of additional *Brady* material. ECF 40-5. The Government responded to that letter on December 23, the Friday before Christmas Eve. ECF 40-6.

respectfully requests that the Government should answer basic questions of "who," "what," "when," "where," and "why" as to each of the disclosures identified in ECF 39-1. Where the Government is in possession of information that supplies such details, that information is *Brady* material and must be produced to Mr. Goel.

### III.  MOTION TO COMPEL DISCLOSURE OF RULE 16 DISCOVERY

**A.     The Government Has Failed To Produce Mr. Niranjan's Non-Prosecution Agreement As Required Under Rule 16.**

The Government has confirmed that it entered into a non-prosecution agreement with Mr. Niranjan on July 23, 2022, but disputes that the final agreement, and any drafts, are Rule 16 material such that they should be produced to Mr. Goel at this time. Opp. 7-11. For the reasons described below, the non-prosecution agreement (and any drafts) are Rule 16 material and should be produced promptly.[6]

In the Second Circuit, "[e]vidence is material [under Rule 16] if it could be used to counter the government's case or to bolster a defense." *United States v. Clarke*, 979 F.3d 82, 97 (2d Cir. 2020) (internal quotations omitted). The Government is instructed to "interpret the language of Rule 16 broadly to ensure fairness to the defendant." *United States v. Martinez*, 844 F. Supp. 975, 982 (S.D.N.Y. 1994). "The materiality standard [of Rule 16] normally is not a heavy burden." *United States v. Stein*, 488 F. Supp. 2d 350, 356-57 (S.D.N.Y. 2007).

The Government argues for a standard requiring that Rule 16 material "significantly alter the quantum of proof in [the defendant's] favor," Opp. 9, citing a single case in support of its

---

[6] The Government has already committed to producing the non-prosecution agreement (and any drafts). Opp. 8 ("Goel contends that the Government is required to produce its non-prosecution agreement with Niranjan (and any drafts) . . . The Government will make such productions as part of its *Giglio* disclosures on the schedule agreed to before the Court."). The only question is whether the agreement and associated drafts are material under Rule 16, such that they should be produced to Mr. Goel at this time.

proposed standard: *United States v. Maniktala*, 934 F.2d 25, 28 (2d Cir. 1991). But the standard articulated in *Maniktala* arose out of a convicted defendant's motion for a new trial in a case where the Government failed to produce a small subset of documents which were virtually identical to documents that had been produced to the defendant well in advance of trial. *Id*. at 27. The court, in ruling on the defendant's motion, clarified that "[m]ateriality, of course, must be assessed *against the backdrop of all the evidence presented to the jury*." *Id*. at 28 (emphasis added). Courts in this Circuit have rejected the standard in *Maniktala* when assessing the materiality of evidence *before* trial, noting that it applies only when an *appellate court* is considering whether the Government's disclosure failures are serious enough to merit a new trial. *See, e.g.*, *United States v. Vasquez*, 2021 WL 2186224, at *2 n. (E.D.N.Y. May 27, 2021) (rejecting the *Maniktala* standard of materiality because "the relevant question is not whether there should be a new trial on account of the denial of certain pretrial discovery but whether certain pretrial discovery is warranted"); *Clarke*, 979 F.3d at 97 (appellate courts will order a new trial on account of the denial of discovery only where the pretrial disclosure of the disputed evidence would have enabled the defendant "significantly to alter the quantum of proof in his favor") (internal quotations omitted).

The standard governing when an agreement between the Government and a cooperator qualifies as Rule 16 material is articulated in *Stein*: whether the agreement and its drafts are "likely to play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Stein*, 488 F. Supp. 2d at 359.[7]

---

[7] The Government suggests that *Stein* has not been adopted by other courts. However, courts have applied *Stein* in multiple contexts, including in assessing whether drafts of an agreement between the Government and a cooperator are discoverable under Rule 16. *See, e.g.*, *Vasquez*, 2021 WL 2186224, at *4. In *Vasquez*, defendants sought production of drafts of an agreement between the Government and a cooperator, as well as the associated correspondence. *Id.* Judge Chen analyzed the issue by applying *Stein*. Ultimately, the *Vasquez* court found *Stein* inapposite, but it did so only after the Government represented that the drafts of the agreement and related correspondence

The Government mischaracterizes *Stein* as being predicated on "unique" factual circumstances, yet fails to identify a single unusual fact about the case. Opp. 10. In *Stein*, there was a "give and take" between the Government and the cooperator regarding what the cooperator "was prepared to admit and what the [G]overnment unsuccessfully sought." 488 F. Supp. 2d at 359. Judge Kaplan found that the negotiation between the Government and the cooperator in *Stein* was likely to "shed light on" matters at-issue in the case, including the existence of admissible evidence, the preparation of witnesses, the corroboration of testimony, and, possibly, impeachment. *Id.* Nothing about these facts indicate unique circumstances that would distinguish *Stein* from the present case. Indeed, Judge Kaplan's reasons for requiring disclosure in *Stein* apply similarly here where the Government has given a non-prosecution agreement to an individual whom the Government alleges received and traded on inside information. The Government does not dispute that the agreement and drafts between Mr. Niranjan and the Government are "likely to play an important role in uncovering admissible evidence" (including, as discussed below, in establishing the Government's control over evidence in Mr. Niranjan's possession) "aid[] witness preparation, corroborat[e] testimony, or assist[] impeachment or rebuttal." *Id.* As such, they should be produced as Rule 16 material.

Mr. Goel respectfully requests this Court grant his Motion to Compel and Order the Government to produce Mr. Niranjan's non-prosecution agreement, and the corresponding drafts and communications.

---

did not disclose the same "give and take" between the cooperator and the Government that was critical to the holding in *Stein*. *Id.* The Government makes no attempt at making such a showing here, or at otherwise distinguishing the present case from *Stein*.

**B.** **The Government Must Collect Mr. Niranjan's Electronic Devices And Review The Information Therein Because Those Devices Are In The Government's Control For Purposes of Rule 16.**

The Government continues to refuse to collect and review the documents held by Mr. Niranjan, its sole cooperator. It does so despite its demonstrated control over Mr. Niranjan and his devices, despite the presence of material Rule 16 evidence on these devices, and despite the repeated failures of Mr. Niranjan to produce accurate and fulsome information in response to Mr. Goel's requests for information to the Government.

The Government claims that Mr. Goel seeks "access to all of Niranjan's files so that Goel can conduct a fishing expedition for potential *Giglio* material for other improper purposes." Opp. 11. This is not the purpose of Mr. Goel's Motion to Compel, nor is it the relief he seeks. Mr. Goel seeks an Order requiring the Government to "take control over Mr. Niranjan's devices . . . and produce additional, relevant communications and documents from them." Mot. 2. Mr. Goel is not asking for access to Mr. Niranjan's devices—he asks only that the Government meet its minimum burden to collect, review, and produce Rule 16 material in its control, so that Mr. Goel can mount an adequate defense. If Mr. Goel is granted the relief he seeks, it will be up to the Government to review and produce documents to Mr. Goel in accordance with its obligations. The Government should not leave the control over its cooperator's documents to the cooperator himself.

**1.** **The Government Has Control Over Mr. Niranjan's Devices For Purposes Of Rule 16.**

Rule 16 requires the Government to produce evidence requested by a defendant so long as that evidence is "material to preparing the defense" and "within the government's possession custody, *or control*." Fed. R. Crim. P. 16(a)(1)(E) (emphasis added). The Government has control over Mr. Niranjan's documents and devices pursuant to the undisputed terms of his non-prosecution agreement. Mr. Niranjan must "provide to [the Government] upon request, *any*

document, record or other tangible evidence relating to matters about which this Office or any designated law enforcement agency inquires of him." *See* ECF 40-11 (emphasis added).

The Government contends that "[b]ecause Mr. Niranjan's devices are not in the Government's *possession*, Rule 16 does not require their production." Opp. 15 (emphasis added). But the Government mistakenly excises the words "custody, or control" from the plain language of Rule 16. *See, e.g.*, Opp. 12 ("the Government's disclosure obligations extend to materials in the possession of the prosecution team") (internal quotations omitted); *Id.* ("the Government's discovery obligations extend only to materials in the possession of the prosecution team"); *Id.* at 15 ("Because Niranjan's electronic devices are not in the Government's possession, Rule 16 does not require their production").

Under the Federal Rules,[8] there are multiple "ways in which a party not in actual possession of material may have control over it," including through the "practical ability" to obtain it or the "legal right" to do so. *S.E.C. v. Strauss*, 2009 WL 3459204, at *7 (S.D.N.Y. Oct. 28, 2009) (finding the Government had "control" over electronic database held by third party because it had "the practical ability and the legal right to obtain" the evidence therein). "Courts have *universally* held that documents are deemed to be within the possession, custody or control if the party has actual possession, custody or control *or has the legal right to obtain the documents on demand*." *Tomlinson v. El Paso Corp.*, 245 F.R.D. 474, 476 (D. Colo. 2007) (emphasis added) (citation omitted). So too held the court in *Chevron Corp. v. Salazar*, explaining that "control" is to be construed "broadly" to encompass documents that the respondent has the "legal right, authority,

---

[8] Federal Rule of Criminal Procedure 16 uses the same "possession, custody, or control" language that is found in the Federal Rules of Civil Procedure. *See, e.g.*, Fed. R. Civ. P. 26(a)(1)(A)(ii), 34(a)(1), and 45(a)(1)(A)(iii). "[C]ase law under all of the relevant rules—[civil and criminal]— is equally instructive" when analyzing whether a party has custody or control over documents. *In re Various Grand Jury Subpoenas*, 235 F. Supp. 3d 472, 478 (S.D.N.Y. 2017) (citation omitted).

or practical ability to obtain . . . upon demand." 275 F.R.D. 437, 447 (S.D.N.Y. 2011) (internal quotations omitted).

Under Rule 16, as in other contexts, "control is broadly construed" to include "the legal right to obtain the documents in question." *See United States v. Noel*, 2020 WL 12834537, at *2 (S.D.N.Y. June 9, 2020) (internal quotations omitted); *United States v. Giffen*, 379 F. Supp. 2d 337, 342-43 (S.D.N.Y. 2004). Indeed, "every circuit to have considered the question has held that 'control' under the federal rules of procedure includes the legal right to obtain the documents in question." *Stein*, 488 F. Supp. 2d at 360-64.

The Government's attempts to distinguish *Stein* are unavailing. Courts in the Second Circuit have not "expressly rejected *Stein*." Opp. 14, n. 2. In *United States v. Meregildo*, Judge Pauley discussed *Stein* approvingly, and simply noted that its holding was not applicable in analyzing a motion to compel *Brady*, reasoning that "Rule 16 and *Brady* vindicate separate interests." 920 F. Supp. 2d 434, 443 (S.D.N.Y. 2013). While a Central District of California court stated *Stein* was "inconsistent with [the] *Ninth Circuit's*" interpretation of Rule 16, *United States v. Carson*, No. 09 Cr. 77 (JVS) (C.D. Cal. Dec. 8, 2009) (Order, ECF No. 133 at 6) (emphasis added), *Stein* is consistent with the text of Rule 16 and how district courts in this Circuit read Rule 16.

Next, the Government argues that because "Niranjan is not part of the prosecution team," the Government "does not have possession, custody, or control over his devices."[9] Opp. 11. But

---

[9] The Government's claim that "cooperating witnesses and witnesses with non-prosecution agreements are" *per se* "not members of the prosecution team" is misplaced. Opp. 12. There are circumstances when a government cooperator may be considered part of the prosecution team. *Compare United States v. Barcelo*, 628 F. App'x 36, 38 (2d Cir. 2015) (assuming "without deciding" that a cooperating witness could be part of the prosecution team) *with Meregildo*, 920 F. Supp. 2d at 444 ("in most cases" but not all "cooperating witnesses should not be considered part of the prosecution team").

that is not the standard. The fact that the Government has control over Mr. Niranjan's devices is apparent from Mr. Niranjan's agreement with the Government, which states that he must "provide to [the Government] upon request, *any* document, record or other tangible evidence relating to matters about which this Office or any designated law enforcement agency inquires of him." *See* ECF 40-11 (emphasis added). The Government's control over Mr. Niranjan's devices is also apparent from the record of discovery in this matter: whenever the Government has sought documents from Mr. Niranjan's devices, Mr. Niranjan has complied, as he is required to do. *See, e.g.*, ECF 40-9 (noting August 15 production of documents from Mr. Niranjan was made "at the Government's request"); ECF 40-11 (noting that November 16, 2022 production of documents from Mr. Niranjan was made "in response to [the Government's] various requests"); ECF 40-13 (noting that "at the request of the Government" Mr. Niranjan produced documents "from Niranjan's cellphone").

The Government does not deny, nor could it, that Mr. Niranjan would be obligated to turn over his devices if the Government asked. As such, the Government has control over the evidence Mr. Goel seeks and must review and produce any Rule 16 material on Mr. Niranjan's devices so long as it is material to the defense.

### 2. Mr. Niranjan's Devices Contain Evidence That Is Material To The Defense Under Rule 16.

Mr. Niranjan's devices are almost certain to contain unproduced Rule 16 material—a fact that the Government does not deny. *See United States v. Urena*, 989 F. Supp. 2d 253, 261 (S.D.N.Y. 2013) ("The materiality standard of Rule 16 normally is not a heavy burden." (internal quotations omitted)). Instead, the Government argues that collecting and reviewing Mr. Niranjan's devices would "saddle[]" the Government with the "burdensome task" of reviewing the collected materials. Opp. 15. But that is an obligation that the Government voluntarily undertook when the

Government required that Mr. Niranjan must "provide to [the Government] upon request, *any* document, record or other tangible evidence relating to matters about which this Office or any designated law enforcement agency inquires of him." *See* ECF 40-11 (emphasis added).

Moreover, Rule 16 does not provide a "burden" exception. "Determining materiality of information discoverable under Rule 16 . . . must not be made according to a cost benefit analysis." *United States v. McVeigh*, 954 F. Supp. 1441, 1450 (D. Colo. 1997) (burden is "not a proper objection" in response to Rule 16 requests). Even if burden were a factor which this Court should consider in determining the extent of the Government's Rule 16 obligations (it is not), it would hardly be "untenable" to require the Government to collect and review the information held by its only disclosed cooperator in an alleged tipper-tippee case.[10] Opp. 15. Indeed, it is routine for the Government to obtain a cooperator's electronic devices. *See, e.g.*, *United States v. Tuzman*, 2021 WL 1738530, at *31 (S.D.N.Y. May 3, 2021) (Government "reviewed hundreds of emails between [a cooperator] and [the defendant] found on the hard drive of [the cooperator's] computer"); *United States v. Kloszewski*, 2017 WL 2061391, at *5 (S.D.N.Y. May 11, 2017), *aff'd*, 760 F. App'x 12 (2d Cir. 2019) (finding the Government's failure to collect and review a cooperator's phone to be "arguably negligent"); *United States v. Djibo*, 151 F. Supp. 3d 297, 298 (E.D.N.Y. 2015) ("Cooperator's phone was seized and searched").

### 3. The Government's Current Process For Collecting And Reviewing The Information On Mr. Niranjan's Devices Has Proven To Be Inadequate.

The Government has not complied with its Rule 16 obligations, in part, because it seems

---

[10] This practice is especially true in this case, where there is a near certainty that material Rule 16 evidence will be found on Mr. Niranjan's devices, including: (a) communications during the key time periods with individuals other than Mr. Goel; (b) communications in all time periods with key individuals, including Mr. Niranjan's brother, in whose account the allegedly unlawful trades were placed; and (c) other materials related to Mr. Niranjan's trading, including, for example, his bank records, communications, and internet search history.

to have delegated those obligations to Mr. Niranjan.  The process of discovery in this case reflects the inadequacy of this approach.  The known deficiencies in the Government's production of evidence gathered from Mr. Niranjan are as follows:

**June 3 Recording** – On January 19, 2023, the Government informed Mr. Goel that due to an error by Mr. Niranjan, the recording referred to as the June 3 recording in the Indictment, the Government's production cover letters, and the Government's correspondence between July 2022 and mid-January 2023, was actually captured on June 5, 2022.  *See* ECF 40-3.

**Newly Disclosed June 5 Recording** – On or around January 27, 2023, seven days after Mr. Goel filed his Omnibus pre-trial motions and over six months after the Indictment was unsealed, the Government produced an additional, previously undisclosed recording of Mr. Goel that was purportedly taken on June 5, 2022.  *See* Supplemental Declaration of Adam Ford, dated February 10, 2023 (the "Ford Suppl. Decl."), Ex. 1.  This recording, like the already-produced June 5 recording, was apparently saved on Mr. Niranjan's wife's phone.  According to the Government this recording was discovered in the course of Mr. Niranjan's review of documents in response to the Rule 17(c) subpoena he received from Mr. Goel.  *Id.*

**Communications with Mr. Niranjan's Brother** – In a letter dated January 18, 2023, the Government incorrectly claimed that Mr. Niranjan had collected and produced communications between Mr. Niranjan and his brother from the pertinent February 2017 through May 2018 time period.  ECF 40-11.  The Government now acknowledges this was not accurate.  Opp. 17, n. 5. The document cited by the Government to support this claim includes 17 individual messages exchanged between Mr. Niranjan and his brother, the earliest of which was sent on April 29, 2022. *See* ECF 40-17.  These messages, all of which post-date the latest allegedly unlawful tips and trades in the Indictment, represent the totality of the communications the Government has produced that include Mr. Niranjan's brother.

**Communications in the Key Time Period** – In a letter dated January 18, 2023, the Government stated that its November 16, 2022 production contained communications from the pertinent February 2017 through May 2018 time period.  ECF 40-11.  The Government now acknowledges this was not accurate, and that, in fact, that production did not contain any communications in the key time period.[11]  Opp. 17, n. 5.

---

[11] The Government mistakenly asserts that Mr. Goel claims not to have received any communications from the February 2017 through May 2018 time period.  Opp. 17.  Mr. Goel never made this claim.  Mr. Goel stated in his Motion that "While the Government made a November 16, 2022 production identified as 'Records produced by Akshay Niranjan,' . . . *that production . . . did not contain any text messages from February 2017 through May 2018.*"  Mot. 13 (emphasis added).  The context and content of the paragraph the Government cites makes clear that Mr. Goel was referencing the November 16, 2022 production, not the entirety of the Government's productions.

**Signal Messages** – On October 24 and again on October 31, the Government indicated that all of Mr. Niranjan's Signal messages to and from Mr. Goel could be found on extraction reports produced on August 15.[12]  *See* ECF 40-9, 40-13.  The Government noted in both of these letters that, due to an error attributable to Mr. Niranjan's counsel, certain of these communications were mistakenly excluded, but that the Government intended to collect those missing messages from Mr. Niranjan.  *Id.*  Months later, after additional requests by Mr. Goel for these missing Signal messages, the Government now states that there are no Signal messages in the extraction reports, and all of the Signal messages have already been produced to Mr. Goel in a non-native, screenshot format.[13]  ECF 40-11

**C.**     **The Government Has Produced, Or Has Plans To Produce, June 5 And June 10 Recordings Sufficient To Satisfy Mr. Goel's Motion to Compel.**

**June 5, 2022 Recording**.  On Friday, February 3, 2023, at approximately 4:32 p.m., the Government stated that the June 5 Recording was not a forensic copy of the original recording and offered to request that Mr. Niranjan's wife engage a third-party vendor to make forensic copies of "the relevant audio file(s) on her phone, including the recording of the June 5, 2022" conversation between Mr. Goel and Mr. Niranjan, and to produce to Mr. Goel the collected forensic copies. Ford Suppl. Decl. Ex. 2.  On Monday, February 6, Mr. Goel confirmed that forensically-collected, identical copies of the recordings on Ms. Niranjan's phone would likely obviate the need for the Court's intervention.  Ford Suppl. Decl. Ex. 3.  Assuming suitable forensic copies of any and all versions of the June 5 Recording are produced to Mr. Goel, and reserving the ability to raise issues based on what is produced, Mr. Goel submits that the Government will have satisfied his Motion to Compel the Disclosure of Rule 16 Discovery as it pertains to the June 5 Recording and Device.[14]

---

[12] None of the Government's production cover letters, including the August 15 cover letter, provide any indication that they contain Signal messages.  *See* Opp. Ex. B.

[13] The Government produced two additional screenshots of Signal messages on November 16, 2022.  One of the screenshots is a portion of a June 10, 2022 conversation with Mr. Goel and Mr. Niranjan, while the other appears to be a screenshot of a May 21-22, 2022 conversation between Mr. Goel's wife and Mr. Niranjan's wife.

[14] Mr. Goel and the Government continue to discuss the specifics of the collection and production of the forensic copies of the recordings on Ms. Niranjan's phone.  If and when Mr. Goel receives forensic copies of the June 5 Recording audio files in a manner that is satisfactory, he will respectfully withdraw his Motion to Compel the Disclosure of Rule 16 Discovery, as it pertains to the June 5 Recording.

**June 10, 2022 Recording**. On January 6, 2023, Mr. Goel requested that the Government provide additional information about the June 10 Recordings, including whether the copies of the Recordings sent to Mr. Goel were identical forensic copies of the original recordings. ECF 40-20 at 5. In its February 3 Opposition, the Government stated that two of the six versions of the June 10 Recordings it produced are "identical forensic copies" of the original audio files. Given the Government's representations that it has produced complete, identical forensic copies of the June 10 Recordings, Mr. Goel submits that the Government has satisfied his Motion to Compel the Disclosure of Rule 16 Discovery as it pertains to the June 10 Recordings.

## IV.   MOTION FOR AN AUDIBILITY HEARING

The Government does not dispute, and Your Honor has noted, the Court has an important "gatekeeping role" where, as here, the Government and defendant take different positions as to whether a recording is audible. ECF 40-21 at 5:3-7; *see also United States v. Bryant*, 480 F.2d 785, 790 (2d Cir. 1973) ("Whether a recording is sufficiently audible to be probative is a matter within the sound discretion of the trial judge.").

In opposing any audibility hearing, the Government relies exclusively on cases where courts either held an audibility hearing, ruled that an audibility hearing should have been held, or otherwise reviewed the recordings before ruling on admissibility. Opp. 21-22. For example, in *Bryant*, the Second Circuit held that it was improper to permit a tape (whose admissibility was contested) to be played for a jury when the judge had not first listened to the tape at a pre-trial hearing. The Second Circuit explained:

> [T]he first time the judge heard the tape was when it was played to the jury. The judge did not listen to the tape to determine its audibility or to ascertain the accuracy of the transcript before both were presented to the jury. This procedure was improper.

*Bryant*, 480 F.2d at 789. *See also United States v. Mergen*, 543 Fed. App'x 46, 48 (2d Cir. 2013) ("The district court played the recording . . . outside of the jury's hearing."); *United States v. McDonald*, 1999 WL 753488, at *1 (2d Cir. Sept. 16, 1999) ("The district court held an audibility hearing prior to trial."); *United States v. Arango-Correa*, 851 F.2d 54, 57 (2d Cir. 1988) ("At a suppression hearing before trial, the district court considered the admissibility of the audiotapes."); *United States v. Malachowski*, 604 F. Supp. 2d 512, 518 (N.D.N.Y. 2009) ("The recordings at issue were reviewed in chambers following oral argument from both parties.").

It appears undisputed that recordings should not be admitted where "the unintelligible portions are so substantial as to render the recording as a whole untrustworthy." Opp. 21 (quoting *Arango-Correa*, 851 F.2d at 58). The June 5 and June 10 recordings drastically differ in quality from the "audible" recordings admitted in the cases the Government cites. As an example, in *McDonald*, the Second Circuit held it was not plain error for the district court to admit a recording that was accurately transcribed, in part evidenced by the defense only making trivial objections to the transcript during the audibility hearing. 1999 WL 753488 *1-2. The Second Circuit reasoned that "a tape that is sufficiently audible to be accurately transcribed should be sufficiently audible not to mislead a jury." *Id.* at *2; *see also Malachowski*, 604 F. Supp. 2d at 518 (finding "overwhelmingly audible" recordings admissible). Even a cursory review of the Government's draft transcripts reveals that the June 5 and June 10 recordings are not presently "sufficiently audible to be accurately transcribed." *See* Mot. 24.

The Government's Opposition misreads *United States v. Hemmings*. The court in *Hemmings* reviewed and analyzed five recordings and only found two of them admissible. Mot. 23-24; *United States v. Hemmings*, 2009 WL 1616517, at *3-4 (E.D.N.Y. June 9, 2009), *aff'd*, 482 Fed. App'x 640 (2d Cir. 2012). The other three recordings, "significant portions of [which]

remain[ed] substantially inaudible," were ruled entirely inadmissible. Mot. 23-24; *Hemmings*, 2009 WL 1616517, at *4.

The Government's argument that Mr. Goel's request for an audibility hearing is premature because "the Government has not yet identified, and is not yet required to identify, which portions of the recordings the Government will seek to play," Opp. 23, overlooks that the unintelligible portions of the recordings are so substantial as to render the recordings as a whole untrustworthy. Putting aside whether the Government has the right to selectively pick portions of any recording that it wishes to play, courts in the Second Circuit routinely rule on audibility issues before any motion *in limine* is filed. *See, e.g.*, *United States v. Santobello*, 1994 WL 525053, at *5 (S.D.N.Y. Sept. 23, 1994), *aff'd*, 101 F.3d 108 (2d Cir. 1996) (granting defendant's motion for an audibility hearing after oral argument on the defendant's pre-trial motions); *United States v. Taylor*, 1992 WL 249969, at *12 (S.D.N.Y. Sept. 22, 1992) (ruling on defendants' omnibus motions and granting request for an audibility hearing).

## V. MOTION FOR A BILL OF PARTICULARS

The Court should issue an Order limiting the Government's proof at trial consistent with its December 23 Bill of Particulars or, in the alternative, order the Government to provide a Bill of Particulars identifying (1) the transactions it alleges were unlawful; (2) the identity of all known co-conspirators; and (3) the MNPI it alleges Mr. Goel provided to Mr. Niranjan, along with the dates it alleges Mr. Goel received the MNPI, and the Bates numbers of all documents representing the source of the MNPI.

**A.     The Government's Proof At Trial Should Be Limited To The Trades Identified In The December 23 Bill Of Particulars.**

The Government maintains that it has already provided Mr. Goel information identifying the transactions that the Government asserts are unlawful. Opp. 30. But in identifying the ███████

███████████████████████████████████████████████ the Government stated that it

provided ███████████████████████████████████████████████" ECF

40-31 at 2-3.  And again in its Opposition, the Government resists any "ruling now that limits the

Government's proof."  Opp. 31.  But purporting to identify the allegedly unlawful trades—while

simultaneously reserving the right to expand the universe of trades that the Government will press

at trial—is inconsistent with the weight of authority in the Second Circuit and this Court's Order

in *United States v. Walters*.  ECF 40-32 at 19:1-20:7; *see also United States v. Blaszczak*, 17-cr-

00357 (S.D.N.Y. Mar. 13, 2018) (Order, Dkt. No. 143) (directing the government to file a bill of

particulars identifying trades the government contends were based on inside information)).

In opposing Mr. Goel's request for a bill of particulars, the Government also overlooks its

representation to this Court on November 17, 2022 that the Government will limit its "evidence in

chief . . . to support the crimes charged" to trading in securities "identified *in the indictment*."  ECF

40-21 at 25:14-19.  As this Court observed during a conference addressing similar issues in *United

States v. Walters*, "[r]epresentations [by the Government as to the scope of its charges] have

consequences."  ECF 40-32 at 19:1-20:7.

The Government should be bound to its prior representations—both its representations to

this Court on November 17 and in its December 23 notice of the purportedly unlawful trading.

The caselaw the Government cites underscores this point.  The Government points to *United States

v. Johnson* and contends that this case "makes clear that [Mr. Goel] is not entitled to a bill of

particulars."  Opp. 30.  But in *Johnson*, the Court concluded that a bill of particulars was not needed

*because* the Court had ordered the Government "to issue a *final, binding designation* of the trades

it alleges to be unlawful" more than two months before trial.  *United States v. Johnson*, 2017 WL

11490480, at *6 (E.D.N.Y. May 24, 2017) (emphasis added).  The Court reasoned that this relief

was necessary because the "Government's explicit reservation of rights to expand the list of trades creates an unacceptable risk of unfair surprise and could hamper defense preparations for trial." 2017 WL 11490480, at *6.  The same is true here.

**B.      The Court Should Order The Government To Provide A Bill of Particulars Identifying All Co-Conspirators As Soon As Possible And No Later Than March 31, 2023.**

In response to Mr. Goel's request for a bill of particulars naming all co-conspirators, the Government has represented to the Court that it will identify any co-conspirators—in addition to Mr. Niranjan—"no later than 60 days before trial."  Opp. 32.  But the Government does not provide any justification for withholding the identify of all alleged co-conspirators until that date.  As the Court explained in *United States v. Pinto-Thomaz*, where a defendant is alleged to have conspired with only one other person, "it would meaningfully alter the nature of the charges and, accordingly, [the defendant's] preparation for trial if it were revealed that the Government considered him to be conspiring with other individuals, rather than only [one co-conspirator]."  352 F. Supp. 3d 287, 303 (S.D.N.Y. 2018); *see United States v. Feola*, 651 F. Supp. 1068, 1134 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir. 1989) (requiring the Government to provide a bill of particulars with "the names of all persons whom the Government will claim at trial were co-conspirators" "as soon as conveniently possible").

Mr. Goel needs to know the identity of all alleged co-conspirators to be able to prepare a defense and avoid unfair surprise at trial.  Courts in this district have ordered the Government to produce a bill of particulars providing the names of co-conspirators well in advance of 60 days before trial.  *See, e.g.*, *United States v. Akhavan*, 2020 WL 2555333, at *3 (S.D.N.Y. May 20, 2020) (ordering the Government to produce a bill of particulars providing the names of co-conspirators no later than June 19, 2020 which was over five months before the trial then set for

December 1, 2020); *United States v. Weigand*, No. 20-cr-188 JSR (S.D.N.Y. May 1, 2020) (Order, ECF No. 29 at 2) (reflecting trial date of December 1, 2020). Accordingly, Mr. Goel requests that the Court order the Government to provide a Bill of Particulars identifying the names of all known co-conspirators as soon as possible, and by no later than March 31, 2023.

## C. The Government Should Identify The MNPI That Is The Source Of The Alleged Insider Trading.

In its Opposition, the Government refuses to provide the MNPI that is the basis of the purported insider trading, and which Mr. Goel allegedly conveyed to Mr. Niranjan. In so doing, the Government: (1) refers to its "detailed Indictment, indexed discovery, and the Government's voluntary disclosure" and (2) incorrectly frames the request as seeking "more detailed information about the evidence it intends to present at trial." Opp. 33-34. Neither of these references are accurate, nor are they a basis for refusing to provide the basic information necessary for "the preparation of a defense or to avoid surprise at trial." ECF 40-32 at 27:9-12.

First, the Government claims a bill of particulars is not necessary because it produced discovery materials that were "accompanied by itemized indices detailing the nature of the documents." Opp. 29. The Government's "itemized indices," Opp. Ex. A, are cover letters containing barebones descriptions such as ███████████████████████ and ███████ ██████████████████████████ Those indices do not displace a bill of particulars, particularly when reviewing the volume of documents the Government has produced to-date, including 3,000 pages of FWCC emails and 1,500 pages of CMCC emails. *See also* Opp. 25 (acknowledging that providing "'mountains of documents to defense counsel who [a]re left unguided as to which documents' are relevant to the charges does not substitute for a bill of particulars where one would otherwise be required" (quoting *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987))).

Moreover, in its Opposition, the Government maintains that it provided details relating to three instances where Mr. Goel purportedly tipped Mr. Niranjan with information related to three separate potential acquisitions. But the Government identified seven takeover transactions in the Indictment and in its December 23 Bill of Particulars. Neither the Indictment, the December 23 Bill of Particulars, nor the Government's Opposition provide any detail relating to the remaining four transactions, and the Government has refused to limit its proof relating to the three transactions to the details identified in the December 23 Bill of Particulars (instead referring Mr. Goel to ███████████████.[15] Finally, the Government has at no point provided information regarding the MNPI that Mr. Goel allegedly provided to Mr. Niranjan.

Second, the Government contends incorrectly that Mr. Goel's request for basic information concerning the MNPI underlying the Government's charges seeks "an inventory of every act it plans to prove was committed in furtherance of the fraud." Opp. 34. And the Government also suggests that providing the MNPI underlying the Government's charges would "force the Government to preview its entire case and Section 3500 material." *Id*. 33-34. However, Mr. Goel is requesting the MNPI that is the basis for the insider trading charges, and the MNPI that the Government alleges was passed to Mr. Niranjan. *See, e.g.*, *United States v. Steinberg*, 2013 WL 12371352 (S.D.N.Y. Sept. 18, 2013) (providing bill of particulars regarding "the nature of the confidential information obtained or passed by one or more of the defendant and/or coconspirators" on 11 publicly-traded companies)

Several courts in this district have ordered the Government to provide a Bill of Particulars with exactly the information that Mr. Goel seeks here:

---

[15] In its December 23, 2022 Bill of Particulars, the Government identified a ██████████████ ██████████████████████████ as a source of MNPI that Mr. Goel allegedly obtained. *See* Mot. 33, n. 21. The Indictment refers only to FWCC emails.

- In *United States v. Contorinis*, the Honorable Richard J. Sullivan, then District Court Judge, now Second Circuit Judge, ordered the Government to supplement insider trading Indictments with "a bill of particulars with respect to the material, non-public information allegedly disclosed in connection with the [] transaction." Ford Suppl. Decl. Ex. 4 at 1 (No. 09-cr-01083-RJS, Dkt. No. 49 (S.D.N.Y. May 5, 2010)).

- In *United States v. Steinberg*, the Government provided a "final" bill of particulars two months before trial setting forth, among other information, "the nature of the confidential information obtained or passed by one or more of the defendant and/or coconspirators," "the sources of that information" and "the approximate periods of time during which one or more of the defendant and/or coconspirators obtained or attempted to obtain the information." Ford Suppl. Decl. Ex. 5 at 1 (No. 12-cr-00121-RJS, Dkt. 299 (S.D.N.Y. Sept. 18, 2013)); *United States v. Steinberg*, No. 12-cr-00121-RJS (S.D.N.Y. July 12, 2013) (Order, Dkt. No. 290 at 2) (reflecting trial date of November 18, 2013).

- In *United States v. Newman*, Judge Sullivan ordered the Government to provide a bill of particulars setting forth, among other information, "the nature of the confidential information obtained or passed," "the sources of that information," and "the approximate periods of time during which one or more of the . . . coconspirators obtained . . . the information."). Ford Suppl. Decl. Ex. 6 at 1 (No. 12-cr-121-RJS, Dkt. 111 (S.D.N.Y. Aug. 29, 2012)).

- In *United States v. Gupta*, the Honorable Jed S. Rakoff ordered the Government to produce particulars such as, "[i]n the afternoon of September 23, 2008, Gupta disclosed . . . material, nonpublic information relating to Warren Buffett's/Berkshire Hathaway's $5 billion investment in Goldman Sachs, prior to the public announcement of that investment after the close of the market on September 23, 2008." Ford Suppl. Decl. Ex. 7 at 3 (No. 11-cr-00907-JSR, Dkt. 47 (S.D.N.Y. Apr. 10, 2012)).

This Court's decision in *Walters* is also instructive. This Court denied the request for a bill of particulars referring to the detailed indictment in the case, and the indexed and searchable discovery. ECF 40-32 at 27:8-12. The Indictment in *Walters* included the alleged dates of the tips, the content of the tips, and the sources of the information. *United States v. Walters*, No. 16-cr-00338-PKC (S.D.N.Y. May 19, 2016) (Indictment, Dkt. Nos. 8, 8-1). By contrast, the Indictment against Mr. Goel alludes generally (in some places, only by month and year) to the date of the tip, provides almost no information about the alleged content of the tip, refers generally to FWCC emails as the source of the information, and the discovery is unindexed as described *supra*.

Likewise the cases that the Government cites denying the request for a bill of particulars providing MNPI are distinguishable. *United States v. Blakstad*, for example, involved only one company and "four earnings releases that spurred allegedly unlawful transactions." 2020 WL 5992347, at \*10-11 (S.D.N.Y. Oct. 9, 2020). "The indictments note[d] that [the alleged tipper] gave [defendant] inside information concerning [a specific company's] financial condition in advance of specific earnings releases" and the Government produced the "emails [defendant] allegedly received from [the alleged tipper] ahead of those earning releases." *Id.* And in *United States v. Martoma*, "[r]ather than vague allegations that unspecified inside information was obtained about a company's prospects" like the Government makes here, "the Government [] provided numerous specific details about the inside information Defendant allegedly obtained." 2013 WL 2435082, at \*4 (S.D.N.Y. June 5, 2013).

In sum, Mr. Goel requests that the Court order the Government to provide a Bill of Particulars that sufficiently identifies the MNPI it alleges Mr. Goel provided to Mr. Niranjan, along with the dates it alleges Mr. Goel received the MNPI, and the Bates numbers of all documents representing the source of the MNPI so that Mr. Goel may adequately prepare his defense.

## VI. MOTION TO STRIKE SURPLUSAGE FROM THE INDICTMENT

The Government argues that the phrases "for example" and "among other things" should not be stricken from paragraph 11 of the Indictment because they are "relevant" and "do not expand the scheme" alleged, but the only purpose of those words is to do just that. As explained in Mr. Goel's Omnibus Brief, Mot. 36-38, courts routinely strike extraneous language in an indictment that might "impermissibly expand[] the charge[s]" against the defendant. *See, e.g.*, *United States v. Kassir*, 2009 WL 995139, at \*4 (S.D.N.Y. Apr. 9, 2009) (striking "among other things" from a charging paragraph with the government's consent); *United States v. DeFabritus*, 605 F. Supp.

1538, 1547 (S.D.N.Y. 1985) (striking "among other things"); *United States v. DePalma*, 461 F. Supp. 778, 798-99 (S.D.N.Y. 1978) (striking "and other activities").

The Government asserts that the cases Mr. Goel relies on are not relevant here because paragraph 11 of the Indictment is a "means paragraph" and not a "charging paragraph." Opp. 38. But a charging paragraph "presents the matter upon which the grand jury based its accusations against a defendant." *United States v. Washington*, 947 F. Supp. 87, 90 (S.D.N.Y. 1996); *see also DePalma*, 461 F. Supp. at 798 ("A charging paragraph in the Indictment sets forth the gravamen of the offense as charged by the grand jury."). Here, paragraph 11 alleges that Mr. Goel "tipped [Mr. Niranjan] with MNPI from the FWCC emails regarding multiple takeover transactions," among other things. Indict. ¶ 11. Paragraph 11, which "sets forth the gravamen of the offense as charged by the grand jury," is a charging paragraph.

Accordingly, the phrases "for example" and "among other things," which "'add[] nothing to the charges, give[] the defendant no further information with respect to them, and create[] the danger that the prosecutor at trial may impermissibly enlarge the charges contained in the Indictment returned by the grand jury,' . . . must be stricken."[16] *Washington*, 947 F. Supp. at 90; s*ee also United States v. Mango*, 1997 WL 222367, at *16 (N.D.N.Y. May 1, 1997) (striking the phrases "among other things" and "among others" because "this language would allow the jury to draw the inference that defendants are accused of crimes not charged in the Indictment.").

---

[16] Quotations from the June 5 and June 10 recordings that are not accurate are surplusage, and should be stricken from the Indictment. *See United States v. Greebel*, 2017 WL 3610570, at *2 (Aug. 4, 2017) (granting motion to strike "unsupported" allegation from an indictment because it "create[] a significant risk of jury confusion and prejudice").

## VII. CONCLUSION

Mr. Goel requests that the Court grant his pre-trial motions and order the requested relief.

Dated:   New York, New York          By:      */s/ Adam Ford*
         February 10, 2023

ADAM C. FORD
FORD O'BRIEN LANDY LLP
275 Madison Avenue, Floor 24
New York, NY 10016
Telephone: 212.858.0040

REED M. BRODSKY
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone:  212.351.4000
Facsimile:  212.351.4035

*Attorneys for Defendant Brijesh Goel*