UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
UNITED STATES OF AMERICA
:
 - v. -                                                                                       No. 22 Cr. 396 (PKC)
:
BRIJESH GOEL,
:
    *Defendant*.
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# THE GOVERNMENT'S MOTIONS TO QUASH
# DEFENDANT'S RULE 17(c) SUBPOENAS

                                                                              DAMIAN WILLIAMS
                                                                              United States Attorney
                                                                               Southern District of New York
                                                                               One St. Andrew's Plaza
                                                                               New York, New York 10007

Joshua A. Naftalis
Samuel P. Rothschild
Assistant United States Attorneys
 - Of Counsel -

**TABLE OF CONTENTS**

BACKGROUND ............................................................................................................................. 1

THE COURT SHOULD QUASH GOEL'S IMPROPER RULE 17(c) SUBPOENAS ................. 3

    A.    Legal Standard ........................................................................................................ 3

    B.    The Subpoena to Niranjan Should Be Quashed...................................................... 5

    C.    The Subpoena to Barclays Should Be Quashed................................................... 12

CONCLUSION............................................................................................................................. 13

## TABLE OF AUTHORITIES

*Bowman Dairy Co.* v. *United States*,
    341 U.S. 214 (1951) .................................................................................................... 3

*United States* v. *Avenatti*,
    No. 19 Cr. 374 (JMF) (S.D.N.Y. Jan. 24, 2022) ................................................ *passim*

*United States* v. *Barnes*,
    2008 WL 9359654, No. 04 Cr. 186 (SCR) (S.D.N.Y. Apr. 2, 2008) ............... *passim*

*United States* v. *Brown*,
    1995 WL 387698, No. 95 Cr. 168 (AGS) (S.D.N.Y. June 30, 1995) ...................... 8

*United States* v. *Carroll*,
    2019 WL 6647871, No. 19 Cr. 545 (CM) (S.D.N.Y. Nov. 8, 2019) ......................... 4

*United States* v. *Carton*,
    2018 WL 5818107, No. 17 Cr. 680 (CM) (S.D.N.Y. Oct. 19, 2018) ......... 7, 8, 12, 13

*United States* v. *Cherry*,
    876 F. Supp. 547 (S.D.N.Y. 1995) ..................................................................... 3, 5

*United States* v. *Cuthbertson*,
    630 F.2d 139 (3d Cir. 1980) ...................................................................................... 6

*United States* v. *Kaufman*,
    2014 WL 2048198, No. 13 Cr. 411 (JMF) (S.D.N.Y. May 19, 2014) ....................... 5

*United States* v. *Marchisio*,
    344 F.2d 653 (2d Cir. 1965) ...................................................................................... 4

*United States* v. *Maxwell*,
    2021 WL 2292773 , No. 20 Cr. 330 (AJN) (S.D.N.Y. June 4, 2021) .................... 5, 7

*United States* v. *Nixon*,
    418 U.S. 683 (1974) ......................................................................................... 1, 4, 6

*United States* v. *Sawinski*,
    2000 WL 1702032, No. 00 Cr. 499 (RPP) (S.D.N.Y. Nov. 14, 2000) ...................... 6

*United States* v. *Scarpa*,
    897 F.2d 63 (2d Cir. 1990) ...................................................................................... 10

*United States* v. *Shah*,
    2022 WL 1422252, No. 19 Cr. 833 (SHS) (S.D.N.Y. May 5, 2022) ............... *passim*

*United States* v. *Skelos*,
   2018 WL 2254538 , No. 15 Cr. 317 (KMW) (S.D.N.Y. May 17, 2018) ........................ 3, 4, 5, 7

*United States* v. *Vasquez*,
   258 F.R.D. 68 (E.D.N.Y. 2009) ............................................................................... 7, 8, 12, 13

*United States* v. *Weissman*,
   2002 WL 31875410, No. 01 Cr. 529 (BSJ) (S.D.N.Y. Dec. 26, 2002) ........................................ 8

The Government moves to quash Rule 17(c) subpoenas served by the defendant Brijesh Goel on (a) Akshay Niranjan, who has entered into a non-prosecution agreement with the Government, and (b) Barclays, Niranjan's employer during the time he committed insider trading with Goel. Both subpoenas are improper under *United States* v. *Nixon*, 418 U.S. 683 (1974), in which the Supreme Court held that Rule 17(c) subpoenas can seek only relevant, admissible, and specific evidence—in other words, identified evidence that the defendant intends and is able to introduce as exhibits at trial. The defendant's requests fail to satisfy this "strict standard." *United States* v. *Shah*, No. 19 Cr. 833 (SHS), 2022 WL 1422252, at *3 (S.D.N.Y. May 5, 2022). Goel's subpoenas to Niranjan and Barclays should also be quashed because they seek documents that the Government either has provided or will provide, and because they improperly seek disclosure of *Giglio* and other irrelevant and inadmissible evidence. The Government has already requested from Niranjan documents relating to the insider scheme and has produced those documents to Goel, and the Government will make its required *Giglio* and Section 3500 disclosures on the schedule agreed to before the Court.

## BACKGROUND

### A.     The Insider Trading Scheme

Goel was an investment banker at The Goldman Sachs Group, Inc. in New York, New York. In that position, Goel received confidential, internal emails that contained detailed information and analysis about potential merger-and-acquisition transactions that Goldman Sachs was considering financing. In violation of the duties that he owed to Goldman Sachs, Goel misappropriated material, non-public information ("MNPI") and tipped Akshay Niranjan ("CC-1" in the Indictment), a friend who worked at Barclays, with the names of potential target companies from these emails, typically during in-person meetings, such as when the two met to play squash.

1

Niranjan then used that MNPI to trade call options, including short-dated, out-of-the-money call options, in brokerage accounts that were in the name of Niranjan's brother. Goel and Niranjan agreed to split the profits from their trading. Between approximately 2017 and 2018, Goel tipped Niranjan on at least seven deals in which Goldman Sachs was involved, yielding total illegal profits of approximately $280,000.

After he became aware of the Government's and the Securities and Exchange Commission's ("SEC") respective investigations, Goel sought to obstruct them by deleting and causing Niranjan to delete electronic communications regarding this insider trading scheme from their cellphones, including during an in-person meeting that Niranjan consensually recorded on June 10, 2022.

**B.     The Government's Requests to Niranjan for Relevant Documents**

As part of its investigation and preparation for trial, the Government requested that Niranjan, through his counsel, provide the Government with: (a) all communications between Niranjan and Goel, including WhatsApp messages, iMessages, Signal messages, and emails, (b) all communications and documents related to the charged insider trading scheme, and (c) all communications and documents related to trading in the securities of Lumos Networks Corp., Patheon N.V., PharMerica Corp., Calgon Carbon Corp., Chicago Bridge & Iron N.V., Sprint Corp., Spirit Airlines, Inc., and Charter Communications, Inc. In response to those requests, Niranjan's counsel provided various materials to the Government, which, in turn, produced all of those materials to Goel.

### C. Goel's Rule 17(c) Subpoenas

On December 21, 2022, Goel served a subpoena on Barclays (Niranjan's employer during the time he committed insider trading with Goel) requesting 12 categories of documents. (Ex. A hereto).

On January 20, 2023, Goel served an undated subpoena on Niranjan's counsel requesting 25 categories of documents. (Ex. B hereto).

**THE COURT SHOULD QUASH GOEL'S IMPROPER RULE 17(C) SUBPOENAS**

As set forth below, the Court should grant the Government's motions to quash Goel's two Rule 17(c) subpoenas. The Government has already requested from Niranjan documents relating to the insider scheme and has produced those documents to Goel, and the Government will make its required *Giglio* and Section 3500 disclosures on the schedule agreed to before the Court. These subpoenas are further improper efforts (like Goel's pretrial motions) to engage in broad fishing expeditions for irrelevant and inadmissible evidence.

### A. Legal Standard

Federal Rule of Criminal Procedure 17(c)(1) authorizes subpoenas for "any books, papers, documents, data, or other objects." "Rule 17(c) was not intended to provide an additional means of discovery," *Bowman Dairy Co.* v. *United States*, 341 U.S. 214, 220 (1951), "but instead" to provide "a mechanism for obtaining specific admissible evidence," *United States* v. *Skelos*, No. 15 Cr. 317 (KMW), 2018 WL 2254538, at *2 (S.D.N.Y. May 17, 2018) (citations omitted). "Because of this, 'courts must be careful that [R]ule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in Rule 16.'" *United States* v. *Barnes*, No. 04 Cr. 186 (SCR), 2008 WL 9359654, at *2 (S.D.N.Y. Apr. 2, 2008) (alterations omitted) (quoting *United States* v. *Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995)).

3

As such, Rule 17 subpoenas are held to the "strict standard" announced by the Supreme Court in *United States* v. *Nixon*, 418 U.S. 683 (1974):

> In order to obtain documents prior to trial, the party making the request must demonstrate that:
>
> (1) the documents sought are evidentiary and relevant;
>
> (2) the materials are not otherwise procurable in advance of trial by the exercise of due diligence;
>
> (3) the party seeking documents cannot properly prepare for trial without such production and inspection in advance of trial and the failure to obtain such inspection may tend unreasonably to delay the trial; and
>
> (4) the application is made in good faith and is not intended as a general fishing expedition.

*United States* v. *Carroll*, No. 19 Cr. 545 (CM), 2019 WL 6647871, at *1 (S.D.N.Y. Nov. 8, 2019) (citation omitted) (quoting *Nixon*, 418 U.S. at 699-700).

To show that the documents are "evidentiary and relevant," *Nixon* held that the party requesting the subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Nixon*, 418 U.S. at 700. "This test is the hallmark of Rule 17(c)(2) analysis, and courts in this jurisdiction and elsewhere have repeatedly and consistently applied it to determine whether third-party subpoenas served by defendants must be quashed as unreasonable or oppressive." *Barnes*, 2008 WL 9359654, at *2 (collecting cases); *see also Skelos*, 2018 WL 2254538, at *1 ("courts in the Second Circuit have almost unanimously applied *Nixon* to subpoenas served on third-parties"). Under this test, "[t]he defendant has the burden of specifically identifying the materials sought, and showing that they are relevant and admissible." *Barnes*, 2008 WL 9359654, at *3. "[T]he document[s] sought must *at that time* meet the tests of relevancy and admissibility." *United States* v. *Marchisio*, 344 F.2d 653, 669 (2d Cir. 1965) (emphasis added).

Importantly, "Rule 17(c) subpoenas cannot be used to obtain documents that would be excluded on hearsay grounds or would otherwise be inadmissible as evidence at trial." *Skelos*, 2018 WL 2254538, at *2. Thus, "[i]t is well established . . . that Rule 17(c) does not provide a basis for pre-trial 'production of materials whose evidentiary use is limited to impeachment.'" *United States* v. *Kaufman*, No. 13 Cr. 411 (JMF), 2014 WL 2048198, at *10 (S.D.N.Y. May 19, 2014) (quoting *United States* v. *Cherry*, 876 F. Supp. 547, 553 (S.D.N.Y. 1995)); *see also United States* v. *Maxwell*, No. 20 Cr. 330 (AJN), 2021 WL 2292773, at *1-2 (S.D.N.Y. June 4, 2021) ("the potential impeachment of a witness does not provide grounds for issuance or enforcement of a Rule 17(c) subpoena because such materials would only become relevant *after* a witness has testified").

Finally, Rule 17(c) subpoenas are also not to be used to obtain statements of prospective witnesses. Rule 17(h) provides that "[n]o party may subpoena a statement of a witness or of a prospective witness under this rule." Instead, the production of materials constituting witness statements is governed by Rule 16(a)(2), Rule 26.2, and 18 U.S.C. § 3500. *See generally* 18 U.S.C. § 3500(a) ("[N]o statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."); Fed. R. Crim. P. 16(a)(2) ("Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500."); Fed. R. Crim. P. 26.2(a) (statements to be produced "after a witness other than the defendant has testified on direct examination").

B.   **The Subpoena to Niranjan Should Be Quashed**

Goel's Rule 17(c) subpoena to Niranjan should be quashed because it runs afoul of *Nixon*'s requirements that the requested evidence be specifically identified, relevant, and

admissible at trial, and not otherwise procurable in advance of trial by the exercise of due diligence.[1]

The subpoena bears the hallmarks of a generalized fishing expedition that fails to meet the specificity requirement set forth in *Nixon*. "In order to satisfy the specificity requirement of *Nixon*, the party seeking production of the materials must 'reasonably specify the information contained or believed to be contained in the documents sought' rather than 'merely hope that something useful will turn up." *Barnes*, 2008 WL 9359654, at *4 (cleaned up) (quoting *United States* v. *Sawinski*, No. 00 Cr. 499 (RPP), 2000 WL 1702032, at *2 (S.D.N.Y. Nov. 14, 2000)). In other words, the subpoena must be targeted at obtaining "identified evidence" rather than serve as a "general fishing expedition." *id.* (quoting *United States* v. *Cuthbertson*, 630 F.2d 139, 144 (3d Cir. 1980)). As described more specifically below, each of the 25 categories in the proposed subpoena is overbroad, likely sweeping in large swaths of materials unrelated to this case, and with a few exceptions fails to specifically identify particular documents sought by the defendant.

The Rule 17(c) subpoena should also be denied because it cannot satisfy *Nixon*'s relevance and admissibility requirements. *See Barnes*, 2008 WL 9359654, at *3 ("The items sought cannot merely be potentially relevant or admissible."). The subpoena is replete with requests for irrelevant and inadmissible evidence. What is more, the subpoena calls for the production of documents that have been produced or will be produced by the Government, including consistent with the Government's *Giglio* and Section 3500 obligations. These requests are therefore improper both because the materials sought are others procurable in advance of trial

---

[1] As a party to this case, the Government has standing to oppose the subpoenas to Niranjan and Barclays. *See United States* v. *Nektalov*, No. 03 Cr. 828 (PKL), 2004 WL 1574721, at *1 (S.D.N.Y. July 14, 2004). The Government may also move to quash a subpoena on behalf of a third party if the Government "stands in the shoes" of the subpoenaed party. *United States* v. *Chen De Yian*, No. 94 Cr. 719 (DLC), 1995 WL 614563, at *2 (S.D.N.Y. Oct. 19, 1995).

by the exercise of due diligence and because they seek statements of prospective witnesses. *See United States v. Maxwell*, 2021 WL 162539, at *2 (S.D.N.Y. Apr. 27, 2021) (rejecting requests that call for materials "that are procurable from the Government"); *United States* v. *Carton*, No. 17 Cr. 680 (CM), 2018 WL 5818107, at *6 (S.D.N.Y. Oct. 19, 2018) (quashing request for personnel file in light of Rule 17(h) because the file related to "a prospective witness in this case"); *United States* v. *Vasquez*, 258 F.R.D. 68, 73 (E.D.N.Y. 2009) ("if the statements sought were made by individuals the Government intends to call as witnesses at the trial, then even if they were admissible [the defendant] would still not be entitled to them now because Rule 17(h) expressly precludes a party from subpoenaing a witness statement"). Thus:

   ***Requests 1 through 3, and 24.*** Request 1 demands "all" documents and communications relating to Niranjan's non-prosecution agreement, including any drafts. Requests 2 and 3 in substance request "all" communications between Niranjan's counsel and the Government. Request 24 seeks "all" communications with anyone about the Government's investigation, the SEC's investigation, and the conduct at issue in this case. As set forth in the Government's opposition to the defendant's pretrial motions, the Government will disclose Niranjan's non-prosecution agreement as part of its *Giglio* disclosures. To the extent that any drafts or communications trigger a disclosure obligation under Section 3500 or *Giglio*, the Government will disclose them, and they are therefore procurable from the Government in advance of trial. The defendant's demand for more than what the Government is required to disclose and for all communications with anyone about this case is simply a fishing expedition and seeks irrelevant and inadmissible hearsay. *See Carton*, 2018 WL 5818107, at *6 (quashing subpoena for "communications between a lawyer at [a law firm] and the Government" because such records "are plainly irrelevant and inadmissible as hearsay"); *Skelos*, 2018 WL 2254538, at *5

(communications between state agency and the Government would not be admissible because they are hearsay). For that reason, courts in this Circuit routinely quash subpoenas like this one that "blindly seek[] 'all' documents." *Barnes*, 2008 WL 9359654, at *4; *see also id.* ("[s]uch a blanket request implicates all of the problems associated with a classic 'fishing expedition'"); *Shah*, 2022 WL 1284550, at *2 ("The request for 'all' such documents and communications without a whiff of specificity as to why she requires them is nothing more than an impermissible 'fishing expedition.'"); *United States* v. *Avenatti*, No. 19 Cr. 374 (JMF) (S.D.N.Y.), at Tr. 67-69 (Jan. 24, 2022) ("[I]n seeking 'any and all communications' . . . [the defendant] sweeps too broadly" and "[h]is request has the earmarks of a fishing expedition premised on a mere hope that something useful will turn up."). For the same reasons, Goel's requests should be denied here.

***Request 4.*** Request 4 seeks "all" documents and communications "reflecting any statements made by you or your counsel, including but not limited to talking points used to make statements to the Government, presentations displayed to the Government, and/or any other documents reflecting what you or your counsel told the Government." To the extent the defendant is seeking documents from Niranjan's outside counsel, such as talking points (which are likely privileged), those are obviously hearsay and cannot be introduced at trial. *See United States* v. *Weissman*, No. 01 Cr. 529 (BSJ), 2002 WL 31875410, at *1 (S.D.N.Y. Dec. 26, 2002) (quashing subpoena for "documents evidencing statements by and interviews of" certain witnesses); *United States* v. *Brown*, No. 95 Cr. 168 (AGS), 1995 WL 387698, at *2 (S.D.N.Y. June 30, 1995) (noting that interview "memoranda would, of course, be hearsay, and inadmissible as evidence at trial"). Similarly, to the extent that this request seeks Section 3500 material and *Giglio* material, the request is improper. *See Carton*, 2018 WL 5818107, at *6; *Vasquez*, 258 F.R.D. at 73 (E.D.N.Y. 2009).

***Requests 5 through 7, and 9 through 11.***  Request 5 seeks "all" documents "concerning any of the allegations, conduct, events, claims, information, or charges in the Indictment."  Request 6 seeks "all" communications "concerning any messages allegedly deleted by You or Brijesh Goel as a result of Communications between You and Brijesh Goel on June 3, 2022 or June 10, 2022."  Request 7 seeks "all" documents concerning various publicly traded companies in which Goel and Niranjan traded based on MNPI.  Request 9 seeks "all" communications concerning non-public information.  Request 10 seeks "all" documents "concerning potential or upcoming corporate transactions."  Request 11 seeks "all" communications involving Brijesh Goel.

As a threshold matter, the requests for "all" documents about the events charged in the Indictment are, again, improper fishing expeditions, which necessarily call for the production of irrelevant and inadmissible evidence.  *See Barnes*, 2008 WL 9359654, at *4; *Shah*, 2022 WL 1284550, at *2; *Avenatti*, No. 19 Cr. 374 (JMF), at Tr. 67-69 (Jan. 24, 2022).  Indeed, many of these requests are so broad as to be practically boundless and certainly unreasonable and oppressive.  In any event, the Government already asked Niranjan to provide, and the Government already produced to Goel:  (a) all communications between Niranjan and Goel, including WhatsApp messages, iMessages, Signal messages, and emails, (b) all communications and documents related to the charged insider trading scheme, and (c) all communications and documents related to trading in the securities of the companies in which Goel and Niranjan traded based on MNPI.  Thus, to the extent that these requests do call for relevant records, the Government has already provided them.

***Requests 8, 13, and 14.***  Request 8 seeks "all" documents "concerning securities trading."  Request 13 seeks "all" documents "concerning your strategy with respect to trading in

9

any securities." Request 14 seeks documents sufficient to show Niranjan's trading algorithm. Once again, the requests for "all" documents is a fishing expedition. *See Barnes*, 2008 WL 9359654, at *4; *Shah*, 2022 WL 1284550, at *2; *Avenatti*, No. 19 Cr. 374 (JMF), at Tr. 67-69 (Jan. 24, 2022). The breadth of these requests—and in particular Request 8—is notable. A request seeking all records "concerning securities trading" is certain to sweep in huge swaths of irrelevant records, including news articles, stocks tips, newsletters and spam, and untold other categories of documents relating in some form to securities or securities trading having nothing whatsoever to do with the conduct at issue in this case. Further, to the extent that these requests demand production of documents about Niranjan's and Goel's lawful trading, they are improper and seek irrelevant and inadmissible evidence. *See* Fed. R. Evid. 404(b)(1); *United States* v. *Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) ("[a] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions").

**Requests 12 and 15.** Request 12 seeks "all" documents and communications involving Akshat Niranjan, Akshay Niranjan's brother. Request 15 seeks "all" documents concerning the transfer of any assets between Akshay and Akshat Niranjan. As the Government has repeatedly advised the defendant, the Government has requested that Akshay Niranjan provide any documents or communications concerning Akshat Niranjan related to the charged insider trading scheme, and those have been produced. The remainder of what is called for by these entirely unreasonable and oppressive requests would include every private message exchanged between brothers and indeed messages between Niranjan and any friend, family member, or anyone else that happened in some way to "concern[ ]" Niranjan's brother. To the extent that Goel seeks "all" documents and communications, this overbroad request is but another improper fishing

10

expedition that calls irrelevant and inadmissible evidence. *See Barnes*, 2008 WL 9359654, at *4; *Shah*, 2022 WL 1284550, at *2; *Avenatti*, No. 19 Cr. 374 (JMF), at Tr. 67-69 (Jan. 24, 2022).

***Requests 16 and 17.*** Request 16 seeks "all" documents concerning any transfer of assets between Niranjan and Goel. Request 17 seeks "all" documents "concerning any loan, payment, or gift" between Niranjan and Goel. As part of its Rule 16 discovery, the Government has already produced documents regarding the fraudulent loan arrangement that Goel and Niranjan used to try to conceal a payment made as part of the insider trading scheme—which documents were provided to the Government by Niranjan. And, as noted, the Government has already requested from Niranjan all communications and documents related to the charged insider trading scheme, and the Government has produced those records to Goel. To the extent that Goel seeks "all" documents relating to any financial transactions between Goel and Niranjan, Goel again is engaged in an improper fishing expedition for irrelevant and inadmissible evidence. *See Barnes*, 2008 WL 9359654, at *4; *Shah*, 2022 WL 1284550, at *2; *Avenatti*, No. 19 Cr. 374 (JMF), at Tr. 67-69 (Jan. 24, 2022).

***Requests 18 and 19.*** Request 18 demands "every" copy of any audio recordings that Niranjan made of Goel in 2022, while Request 19 demands the recording devices that Niranjan used. These requests largely mirror requests made in Goel's pretrial motions. In any event, the defendant has copies of the audio recordings that Niranjan made of Goel because the Government produced them in discovery. The recording devices are not evidence and thus are not the proper subjects of a trial subpoena.

***Requests 20 through 23, and 25.*** Request 20 seeks Niranjan's search history. Request 21 seeks "all" of Niranjan's communications with 21 different companies, banks, and law firms. Request 22 seeks "all" documents reflecting Niranjan's use of "any account held in Akshat

11

Niranjan's name." Request 23 seeks "all" affidavits and other sworn statements that Niranjan has ever signed. Request 25 requests "all" of Niranjan's employment records at Barclays, Deutsche Bank, and DV Trading LLC. As with the rest of Goel's demands, these overbroad requests are but additional improper fishing expeditions that call for irrelevant and inadmissible evidence. *See Barnes*, 2008 WL 9359654, at *4; *Shah*, 2022 WL 1284550, at *2; *Avenatti*, No. 19 Cr. 374 (JMF), at Tr. 67-69 (Jan. 24, 2022). These demands also plainly call for the production of potential *Giglio* material, which is improper. *See Carton*, 2018 WL 5818107, at *6; *Vasquez*, 258 F.R.D. at 73. And, as noted, the Government has already made broad requests of Niranjan and produced the resulting documents to Goel.

### C. The Subpoena to Barclays Should Be Quashed

The Rule 17(c) subpoena to Barclays should be quashed because it too runs afoul of *Nixon*'s requirements that the evidence be specifically identified, relevant, and admissible at trial. The twelve categories of requested documents take the form of requests for "all" documents constituting or concerning: applications for employment (Request 1); documents concerning Niranjan's departure from Barclays (Request 2); Niranjan's personnel file (Request 3); Niranjan's title (Request 4); Barclay's applicable policies and procedures (Request 5); Niranjan's certifications of his compliance with those policies and procedures (Request 6); trade requests (Request 7); 15 different companies over a two-year time period (Request 8); expense reports (Requests 9 and 10); recordings of all telephone conversations (Request 11); and Niranjan's visa status and immigration sponsorship (Request 12). With one exception, none of the records requested can be expected to be relevant and admissible, and such requests are plainly improper fishing expeditions for *Giglio* and other irrelevant and inadmissible evidence. *See Barnes*, 2008

12

WL 9359654, at *4; *Shah*, 2022 WL 1284550, at *2; *Avenatti*, No. 19 Cr. 374 (JMF), at Tr. 67-69 (Jan. 24, 2022); *Carton*, 2018 WL 5818107, at *6; *Vasquez*, 258 F.R.D. at 73.

The one exception is Request 8, which appears designed at least to serve a reasonable defense purpose, in that it seemingly attempts to uncover evidence that Niranjan learned of the potential merger-and-acquisition transactions through his employment at Barclays, rather than from the defendant. But even Request 8 is overbroad in that it requests all documents transmitted from or to Niranjan concerning the targets of the transactions during a two-year period, rather than tailoring the request to seek documents that would reflect Niranjan's having learned of a particular transaction *in advance of that transaction*.

## CONCLUSION

Accordingly, the Government respectfully requests that the Court grant its motions to quash Goel's Rule 17(c) subpoenas.

Dated: New York, New York
       March 15, 2023

                                                        Respectfully submitted,

                                                        DAMIAN WILLIAMS
                                                        United States Attorney

By: _____/s/_____
      Joshua A. Naftalis
      Samuel P. Rothschild
      Assistant United States Attorneys